**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-2390**

FLEET FEET, INC.,

        Plaintiff − Appellee,

    v.

NIKE, INC.; NIKE USA, INC.; NIKE RETAIL SERVICES, INC.,

        Defendant – Appellants.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Catherine C. Eagles, District Judge.  (1:19-cv-00885-CCE-JEP)

Argued:  October 27, 2020                      Decided:  January 26, 2021

Before GREGORY, Chief Judge, and DIAZ and RICHARDSON, Circuit Judges.

Dismissed and remanded by published opinion.  Judge Diaz wrote the opinion, in which Chief Judge Gregory and Judge Richardson joined.

**ARGUED:**  Stanley J. Panikowski, DLA PIPER LLP (US), San Diego, California, for Appellants.   Corby Anderson, BRADLEY ARANT BOULT CUMMINGS, LLP, Charlotte, North Carolina, for Appellee. **ON BRIEF:**  Richard T. Matthews, Andrew R. Shores, WILLIAMS MULLEN, Raleigh, North Carolina; Tamar Y. Duvdevani, DLA PIPER LLP (US), New York, New York, for Appellants.   William S. Cherry, III, MANNING, FULTON & SKINNER, Raleigh, North Carolina; Matthew S. DeAntonio, J. Douglas Grimes, BRADLEY ARANT BOULT CUMMINS, LLP, for Appellee.

DIAZ, Circuit Judge:

In 2019, NIKE, Inc., NIKE USA, Inc., and NIKE Retail Services, Inc. (collectively, "NIKE") launched an advertising campaign with the tagline "Sport Changes Everything." Fleet Feet, Inc. sued NIKE, alleging that the campaign infringed Fleet Feet's trademarks "Change Everything" and "Running Changes Everything." It also moved for a preliminary injunction to halt NIKE's use of the allegedly infringing slogan. The district court granted the motion, enjoining NIKE's use of the tagline and any designation "confusingly similar" to Fleet Feet's marks.

NIKE appealed, asking us to vacate the preliminary injunction. While the appeal was pending, NIKE ended its advertising campaign and disavowed any intent to continue using the tagline. Because NIKE no longer has a legally cognizable interest in the validity of the preliminary injunction, we dismiss this appeal as moot.

Anticipating such a result, NIKE asks that we vacate the district court's order and opinion granting a preliminary injunction. We find no good reason to do so. We do, however, remand the case for such other further proceedings as may be necessary.

I.

A.

Fleet Feet is a nationwide retailer that primarily sells products and services related to running. It offers merchandise made by various fitness manufacturers and has sold NIKE products for decades. But Fleet Feet is also a NIKE competitor because NIKE sells its own products in NIKE stores and through other retailers.

2

Fleet Feet has used its trademarks "Running Changes Everything" since 2009 and "Change Everything" since 2013[1] to advertise in stores, on apparel, at events, on its website, on social media, in YouTube videos, and in printed materials. It obtained trademark registrations from the United States Patent and Trademark Office for "Change Everything" in 2015 and for "Running Changes Everything" in 2020. Due to the companies' longstanding relationship, some NIKE employees were aware of Fleet Feet's commercial use of those phrases.

On July 9, 2019, NIKE launched an advertising campaign with the tagline "Sport Changes Everything." The campaign featured several sports, including running, but didn't focus on running. NIKE spent more than $16 million on the campaign and displayed the slogan in stores, on apparel, at events, on its website, on social media, in YouTube videos, on television, and on murals and billboards. The campaign was to run for seven months, culminating at the Super Bowl in February 2020. NIKE had no plans to use the tagline outside the campaign.

B.

Fleet Feet sued NIKE for trademark infringement and moved for a preliminary injunction to halt NIKE's use of the tagline. To obtain a preliminary injunction, a movant must show that (i) it is likely to succeed on the merits, (ii) it is likely to suffer irreparable

---

[1] NIKE challenged the validity of Fleet Feet's trademarks in the district court, but the court found the trademarks valid for the purposes of the preliminary injunction order. This issue is not before us on appeal.

3

harm without preliminary injunctive relief, (iii) the balance of the equities tips in its favor, and (iv) injunctive relief is in the public interest. *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The district court found for Fleet Feet on each factor and set a $1 million injunction bond, which Fleet Feet posted. *See* Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined.").

The preliminary injunction order prohibits NIKE from "any use whatsoever of the phrase 'Sport Changes Everything,' or any other designation confusingly similar to the RUNNING CHANGES EVERYTHING and CHANGE EVERYTHING marks" when advertising or selling its goods and services. J.A. 2029–30. As required by the injunction, NIKE discontinued the "Sport Changes Everything" campaign two months before its scheduled end.

NIKE timely appealed the preliminary injunction order and requested that the district court stay the injunction pending appeal. The district court denied NIKE's motion, and this court followed suit. We now address the appeal.

II.

NIKE challenges the district court's grant of the preliminary injunction and seeks vacatur of the order. Specifically, NIKE contends that the district court erred in finding that Fleet Feet would likely succeed on the merits of its trademark infringement case and would likely suffer irreparable injury absent preliminary injunctive relief. But as a

4

threshold matter, we must consider whether the end of the "Sport Changes Everything" campaign and NIKE's representations that it didn't plan to use the term after the campaign render moot NIKE's appeal of a preliminary injunction designed to interrupt that very campaign. We conclude that it does.

## A.

"The doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction, which extends only to actual cases or controversies." *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (cleaned up). A case becomes moot, and therefore nonjusticiable, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir. 2013) (cleaned up). "If an event occurs during the pendency of an appeal that makes it impossible for a court to grant effective relief to a prevailing party, then the appeal must be dismissed as moot." *Int'l Bhd. of Teamsters v. Airgas, Inc.*, 885 F.3d 230, 235 (4th Cir. 2018).

The end of the 2020 Super Bowl, coupled with NIKE's representations that it didn't plan to use the term "Sport Changes Everything" after the campaign, foreclosed any possible relief to NIKE based on the preliminary injunction's interference with its "Sport Changes Everything" campaign.[2] Undaunted, NIKE insists that two live issues related to

---

[2] We acknowledge that voluntary cessation of unlawful conduct, standing alone, may not render an appeal moot. *See, e.g., City of Erie v. Pap's A.M.,* 529 U.S. 277, 287 (2000) (holding that the owner's decision to close a nude erotic dancing establishment—after winning a suit challenging the constitutionality of a local ordinance proscribing nudity in public places—was not sufficient to find the city's appeal moot because the establishment was "still incorporated" and "could again decide to operate").

(Continued)

the preliminary injunction remain: (1) the "continued restraint on NIKE's speech" from the order's prohibition of any designation "confusingly similar" to Fleet Feet's trademarks; and (2) NIKE's potential recovery on the injunction bond. Reply Br. at 3. Neither saves this appeal from being moot.

B.

We first address NIKE's argument that the "confusingly similar" language in the preliminary injunction order continues to present a live controversy. We think that, at best, it presents only a potential controversy, which can't sustain this appeal.

At the outset, we doubt that the "confusingly similar" language forbids much beyond use of the "Sport Changes Everything" tagline itself. A prohibition on confusingly similar designations is merely a prohibition on trademark infringement, which is by definition the use of a "colorable imitation" of another's mark that "is likely to cause confusion." 15 U.S.C. § 1114(1)(a). Unsurprisingly then, a "command that one cease using a word that is 'confusingly similar' to an existing trademark is common in trademark case injunctions." *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir.

---

But this case proves the exception. As we explain *infra*, that this case involves an appeal of a preliminary injunction is significant, in that the merits have yet to be finally decided. Moreover, the Court in *City of Erie* was appropriately suspicious of the claim of mootness there, noting its "interest in preventing litigants from attempting to manipulate the Court's jurisdiction to insulate a favorable decision from review." *Id.* at 288. Here, however, NIKE chose the end date for its advertising campaign in advance of the litigation, reducing the likelihood of manipulation. And despite being on the losing end of a preliminary injunction order, NIKE has disavowed any intention to revive its campaign. Simply put, if NIKE had any desire whatsoever to continue using the tagline, it had every incentive to say so, and thereby avoid a finding that its appeal is moot.

1991).  Such language does no more than warn the alleged infringer against "making an insignificant change in the mark to avoid the injunction and then using the altered mark in a confusingly similar manner."  *Id.* at 609.

But even if we assume that the order reaches some category of "potential speech" beyond variations on NIKE's terminated tagline, Reply Br. at 20, NIKE's argument fails because it hasn't identified any actual speech threatened by the preliminary injunction.  In that regard, NIKE hasn't engaged in speech barred by the order so far and doesn't claim that it intends to do so in the future.  There simply isn't any injury for a court to redress.  *See Trump v. New York*, No. 20-366, 2020 WL 7408998, at *2–3 (U.S. Dec. 18, 2020) (dismissing a claim for lack of standing and ripeness because "any prediction about future injury [is] just that—a prediction"); *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) ("A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact remains wholly speculative.") (cleaned up).

For the same reason, NIKE's reliance on *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75 (7th Cir. 1977), is misplaced.  There, Miller sued Heileman for using labels on its beer cans and bottles that infringed on Miller's trademarked beer labels.  *Id.* at 77–78.  The district court issued a preliminary injunction, enjoining the use of "any colorable imitation" of the trademarked labels.  *Id.* at 78.

Heileman appealed the order but then abandoned its use of the allegedly infringing labels.  Despite this, our sister circuit held that the appeal wasn't moot.  *Id.*  Critically, Heileman had begun using new beer labels in place of the abandoned ones. The new labels were just a variation of the old ones, *id.*, and thus presented a live issue that implicated the

7

preliminary injunction—which is exactly what's missing here. Because NIKE hasn't introduced any new slogans that are "confusingly similar" to Fleet Feet's marks, there is nothing left for us to decide regarding the merits of the preliminary injunction.

C.

Next, we consider NIKE's contention that the injunction bond is a live issue. Although we agree that the bond keeps the case as a whole from being moot, it can't do the same for this appeal.

As a general rule, "when the injunctive aspects of a case become moot on appeal of a preliminary injunction, any issue preserved by an injunction bond" can't "be resolved on appeal" but must instead "be resolved in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 396 (1981). This is because a preliminary injunction generally merges into the final judgment. *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 317 (1999). If the movant is ultimately successful in obtaining permanent injunctive relief, even a preliminary injunction that was "wrongly issued" would be "harmless error" because the "final injunction establishes that the defendant *should not have been engaging in the conduct that was enjoined*."[3] *Id.* at 314–15. And if not, the wrongly enjoined party may recover on the injunction bond. *See* Fed. R. Civ. P. 65(c).

The Supreme Court's holding in *Camenisch* illustrates this principle. 451 U.S. at 398. There, the district court issued a preliminary injunction that required the defendant

_____

[3] For example, a preliminary injunction may have been wrongly issued because the movant offered insufficient evidence to show likely success on the merits at the preliminary injunction hearing. But if the movant marshals sufficient evidence to succeed at trial, any (Continued)

university to pay for a deaf student's interpreter. *Id*. at 392. The university complied, but it also appealed the order. While the appeal was pending, the student graduated, which mooted the injunctive aspects of the appeal. *Id.* at 393. The injunction bond preserved the question of who should pay for the enjoined conduct, i.e., the interpreter. *Id.* at 398. But the sole appeal issue of "the correctness of the decision to grant a preliminary injunction" was moot because it would merge into a final decision on the merits. *Id.* at 394.

So too here. NIKE's appeal of the injunction became moot after the 2020 Super Bowl. The injunction bond preserved only the question of whether Fleet Feet should compensate NIKE for the enjoined conduct, i.e., the foregone final two months of NIKE's campaign. The separate issue of the propriety of the preliminary injunction will merge into a final decision by the district court that either finds that Fleet Feet's claims are meritorious, or that NIKE is entitled to collect on the injunction bond.

NIKE's attempt to distinguish this case from *Camenisch* is unavailing. NIKE relies on *Grupo Mexicano*, in which the Supreme Court recognized a caveat to *Camenisch*: A preliminary injunction doesn't merge into a final decision when it enjoins conduct that is lawful *even if* the plaintiff's claims are meritorious. 527 U.S. at 315.

There, Alliance Bond Fund had purchased $75 million in unsecured notes issued by Grupo Mexicano de Desarollo. Due to financial troubles, Grupo Mexicano stopped paying interest on the notes. *Id.* at 310. Alliance sued for breach of contract and moved for a

---

error in issuing the preliminary injunction would have been harmless. *See Grupo Mexicano*, 527 U.S. at 314–15.

preliminary injunction to prevent Grupo Mexicano from transferring any assets, alleging that Grupo Mexicano was "at risk of insolvency, if not insolvent already" and was "dissipating its most significant asset" to other creditors, which "would frustrate any judgment" that Alliance could obtain. *Id.* at 312 (cleaned up).

The district court granted the motion and Grupo Mexicano appealed. While the appeal was pending, the district court granted summary judgment to Alliance, issued a money judgment, and converted the preliminary injunction into a permanent one until Grupo Mexicano satisfied the judgment. *Id.* at 312–13.

The Court held that the appeal of the preliminary injunction wasn't moot despite the issuance of a permanent injunction because Grupo Mexicano contended that the district court "lacked the power to restrain their use of assets pending a money judgment"—even if that money judgment ultimately issues. *Id.* at 317. As the Court described it, "the essence of [Grupo Mexicano's] claim [is] that such an injunction can be issued only after the judgment is rendered." *Id.* at 315. In that unique situation, said the Court, the enjoined party "[has] been harmed by issuance of the unauthorized preliminary injunction—and hence *should* be able to recover on the bond—[because] *even if* the final injunction is proper," the defendant should have been free to engage in the enjoined conduct. *Id.* Thus, where the validity of the preliminary injunction is independent of the validity of the underlying claims on their merits, "[i]t would make no sense" to say that the former merges into the latter. *Id.*

*Grupo Mexicano* doesn't help NIKE. NIKE doesn't argue—nor could it—that it should have been free to run its campaign *even if* it was infringing on Fleet Feet's marks.

10

Rather, NIKE asserts only that the district court erred in analyzing the merits and irreparable harm. But these are the very errors that *Grupo Mexicano* says are harmless because the preliminary injunction merges into a final decision on the merits. *Id.* at 314–15 ("[E]ven if the preliminary injunction was wrongly issued (because at that stage of the litigation the plaintiff's prospects of winning were not sufficiently clear, or the plaintiff was not suffering irreparable injury) its issuance would in any event be harmless error.").

In short, if the district court ultimately finds that NIKE's "Sport Changes Everything" campaign infringed on Fleet Feet's marks, the preliminary injunction will have been, at worst, harmless error. And if it doesn't, NIKE may recover on the bond. Either way, the district court must be the first to resolve NIKE's challenge on the merits.

D.

Finally, NIKE asks for vacatur of the district court's preliminary injunction order if the appeal is rendered moot. According to NIKE, leaving the injunction in place would be unjust because NIKE can't obtain appellate review of the order. In support of its argument, NIKE relies on *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, which held that "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment" of the lower court. 513 U.S. 18, 25 (1994).

We have granted vacatur of a district court's judgment when circumstances warranted doing so. For example, in *Mellen v. Bunting*, 327 F.3d 355 (4th Cir. 2003), we explained that "[i]f a claim becomes moot after the entry of a district court's final judgment and prior to the completion of appellate review, we generally vacate the judgment and

11

remand for dismissal . . . to ensure that a losing party's right of appellate review is not frustrated by circumstances out of that party's control." *Id.* at 364 (citing *United States v. Munsingwear, Inc*., 340 U.S. 36, 39 (1950)).  There, we vacated the district court's grant of declaratory and injunctive relief to prohibit a state-operated military college from sponsoring a daily supper prayer because those claims were rendered moot pending appeal by the graduation of the students who filed the suit.  *Mellen*, 327 F.3d at 365.

But those equitable concerns disappear "when the mooted appeal is of a preliminary injunction in an ongoing litigation," as is the case here.  *Radiant Global Logistics, Inc. v. Furstenau*, 951 F.3d 393, 397 (6th Cir. 2020).  That's because a preliminary injunction "has no preclusive effect—no formal effect at all—on the judge's decision whether to issue a permanent injunction."  *Id.* (quoting *Gjertsen v. Bd. of Election Comm'rs*, 751 F.2d 199, 202 (7th Cir. 1984)).  For that reason, the mooted appeal of a preliminary injunction isn't one of the "limited circumstances," *Mellen*, 327 F.3d at 364, under which vacatur is necessary to "clear[] the path for future relitigation of the issues between the parties." *Munsingwear*, 340 U.S. at 40.

Here, NIKE was preliminarily enjoined from continuing its marketing campaign, but it wasn't unjustly forced to acquiesce to a district court's final judgment within the meaning of *U.S. Bancorp*.  Where an appeal of a preliminary injunction order becomes moot but "the case remains alive in the district court, it is [generally] sufficient to dismiss the appeal without directing that the injunction order be vacated."  13C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3533.10.3 (3d ed. 2019); *see also Mayor of Baltimore v. Azar,* 973 F.3d 258, 296 (4th Cir. 2020) (denying vacatur of a

preliminary injunction that had merged into a permanent injunction); *FTC v. Food Town Stores*, *Inc.*, 547 F.2d 247, 249 (4th Cir. 1977) (denying vacatur of an injunction pending appeal because it lacked "res judicata significance"). We see no good reason in this case— and NIKE offers none—to depart from that general rule here.

*     *     *

For the reasons given, the appeal is dismissed as moot and NIKE's request for vacatur of the preliminary injunction order is denied. The case is remanded to the district court for further proceedings consistent with our decision.

*DISMISSED AND REMANDED*