**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-1079

EDEN, LLC, d/b/a Eden Family Restaurant; FULTON FUN FACTORY, LLC; THE REJUVENATION CENTER II, LLC; B.H.; R.S.,

Plaintiffs – Appellants,

and

HINEBAUGH ENTERPRISES, LLC, d/b/a Noah's Ark Childcare and Learning Center,

Plaintiff,

v.

JIM JUSTICE, in his official capacity as Governor of the State of West Virginia,

Defendant – Appellee.

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling.  John Preston Bailey, District Judge.  (5:20-cv-00201-JPB)

Argued:  March 9, 2022                                  Decided:  June 2, 2022

Before HARRIS and RUSHING, Circuit Judges, and FLOYD, Senior Circuit Judge.

Vacated and remanded with instructions by published opinion.  Judge Harris wrote the opinion, in which Judge Rushing and Senior Judge Floyd joined.

**ARGUED:** Paul J. Harris, HARRIS LAW OFFICES, Wheeling, West Virginia, for Appellants. Benjamin J. Hogan, BAILEY & GLASSER LLP, Morgantown, West Virginia, for Appellee. **ON BRIEF:** Benjamin L. Bailey, BAILEY & GLASSER LLP, Charleston, West Virginia, for Appellee.

PAMELA HARRIS, Circuit Judge:

In March of 2020, West Virginia's Governor began to adopt public-safety measures in response to the outbreak of the COVID-19 pandemic. Six months later, a group of plaintiffs sued, challenging those measures as unconstitutional. The district court dismissed their case, holding that the amended complaint failed to state a valid constitutional claim.

The plaintiffs now appeal that ruling, but we cannot address its merits. The Governor has long since terminated each of the challenged executive orders, and there is no reasonable chance they will be reimposed. As a result, this case has become moot. We therefore vacate the district court's judgment and remand with instructions to dismiss the case.

## I.

In March 2020, as the COVID-19 pandemic unfolded, Governor Jim Justice declared a state of emergency in West Virginia. *See* W. Va. Code § 15-5-6(a), (c)(6). Over the next several months, under the emergency powers granted to the Governor by state law, he issued a series of executive orders ("EOs") responding to the outbreak and spread of the virus within the state. Those are the measures at issue in the case before us, but, as explained below, none remains in place today. We begin by describing the Governor's orders, then turn to the plaintiffs' challenge to them, and finally summarize the changes that have occurred since the plaintiffs filed this appeal.

**A.**

On March 13, 2020, the Governor directed the closure of all West Virginia schools. The same week, he issued EO 2-20, prohibiting the on-premises consumption of food and drink at bars and restaurants; EO 3-20, closing gyms and fitness centers; and EO 6-20, closing barber shops, nail salons, and hair salons.[1] The next week, he issued EO 9-20, a statewide stay-at-home order directing citizens to remain in their homes unless performing an "essential activity"; requiring "[n]on-essential businesses" to temporarily cease operations; and prohibiting gatherings of more than ten people. J.A. 7–8, 29–39.

Over the next several months, as COVID-19 cases fluctuated within West Virginia, the Governor issued other executive orders adjusting these protective measures, loosening them as cases fell and tightening them when the virus became more prevalent. These included, in July 2020, EO 50-20, which required most persons to wear face coverings in certain indoor spaces. And ultimately, the state developed a "color system," coding counties on a scale from green to red based on their weekly COVID-19 case counts, and imposing public-safety measures for those counties depending on the color code assigned. J.A. 9–12; *see, e.g.*, J.A. 48–51 (EO 70-20, which imposed stricter gathering limits on counties designated red, orange, or gold).

---

[1] The plaintiffs' amended complaint describes the substance of these orders but does not provide their EO numbers, which are catalogued at *West Virginia's Response to COVID-19*, Off. Governor Jim Justice (updated Feb. 25, 2022), https://bit.ly/3LCcyZZ.

4

**B.**

The plaintiffs are three businesses and two individuals. Plaintiffs Eden LLC, Fulton Fun Factory, LLC, and The Rejuvenation Center II, LLC each operate a business in West Virginia that was forced to shut down or reduce operations by the executive orders described above. Plaintiffs B.H. and R.S. are mothers of students in West Virginia public high schools, whose children had difficulties transitioning to remote learning after the Governor ordered the schools closed.

In September 2020, six months after the emergence of COVID-19 and with the Governor's responsive orders still in effect, the plaintiffs filed a complaint, which they soon amended, challenging the COVID-19 orders under various constitutional theories. Taken together, they alleged, the orders deprived them of their property without just compensation under the Takings Clause; violated their substantive and procedural rights under the Due Process Clause; violated the Equal Protection Clause by distinguishing between "essential" and "non-essential" businesses and by treating counties differently based on COVID-19 case counts; and violated their First Amendment rights to assembly, by limiting the size of gatherings, and to free expression, by prohibiting live entertainment. The plaintiffs sought declaratory and injunctive relief against the enforcement of each executive order, but no money damages.

In January 2021, the district court granted the Governor's motion to dismiss, holding that the plaintiffs had failed to state a claim on which they could be granted relief. *See Eden LLC v. Justice*, No. 5:20-CV-201, 2021 WL 4241020 (N.D. W. Va. Jan. 7, 2021).

## C.

The plaintiffs timely appealed the district court's judgment.  But while their appeal was pending, circumstances changed.  First, in March 2021, the Governor issued three executive orders – EOs 8-21, 9-21, and 10-21 – which together eased the restrictions that had affected the plaintiffs, increasing the state's gathering limit to 100 people, raising the capacity limit for restaurants and bars to 100% (subject to social-distancing requirements), and permitting all schools to reopen.  Second – and key here – in April 2021, the Governor issued EO 12-21, which terminated altogether each restriction challenged in this case (plus the then-recent March 2021 orders), as part of a global recission of 70 COVID-19 executive orders.[2]  Since then, although the Governor has not formally terminated West Virginia's state of emergency, there have been no new pandemic-related restrictions.

## II.

On appeal, the Governor argues that this case has become moot, and we agree.  In April 2021 – after the district court ruled – the issuance of EO 12-21 took each of the challenged orders off the books, leaving us without a live controversy.  And because there is no reasonable chance that the orders will be reimposed, the voluntary cessation doctrine

---

[2] The plaintiffs mentioned the indoor mask mandate imposed by EO 50-20 in their complaint, and this order was not rescinded by EO 12-21.  But it is unclear that any of the plaintiffs' challenges pertained to that order.  And in any event, the Governor terminated all mask requirements, too, in June 2021.

cannot save this case.  As a result, we vacate the district court's judgment and remand with instructions to dismiss the case as moot.

Article III limits our jurisdiction to cases and controversies.  *See* U.S. Const. art. III, § 2, cl. 1; *Fleet Feet, Inc. v. NIKE, Inc.*, 986 F.3d 458, 463 (4th Cir. 2021).  The mootness doctrine is an important part of that limitation, preventing us from advising on legal questions "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Fleet Feet*, 986 F.3d at 463 (internal quotation marks omitted).  That limit applies "throughout the course of litigation[] to the moment of final appellate disposition," so a case may become moot after entry of a district court's judgment and while an appeal is pending.  *Catawba Riverkeeper Found. v. N.C. Dep't of Transp.*, 843 F.3d 583, 588 (4th Cir. 2016) (internal quotation marks omitted).  In short, "we may only decide cases that matter in the real world" at the time that we decide them.  *Norfolk S. Ry. v. City of Alexandria*, 608 F.3d 150, 161 (4th Cir. 2010) (internal quotation marks omitted).

Under a straightforward application of those principles – and absent any exception, which we address below – this case is moot.  Indeed, the plaintiffs do not meaningfully argue otherwise.  Win or lose, they have already received the "precise relief" they sought in this case:  termination of the challenged executive orders.  *N.Y. State Rifle & Pistol Ass'n v. City of New York*, 140 S. Ct. 1525, 1526 (2020) (holding that case became moot where

7

statutory amendments had provided the relief sought).[3]  As a result, no decision we could issue would have any "practical effect" in the real world.  *Norfolk S. Ry.*, 608 F.3d at 161.  All we could do is "issue 'an opinion advising what the law would be upon a hypothetical state of facts,'" in which the challenged orders had never been rescinded – which we of course lack jurisdiction to provide.  *Catawba Riverkeeper Found.*, 843 F.3d at 589 (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).

We came to precisely that conclusion in a recent case holding moot a challenge to by-then-defunct COVID-19 executive orders in Virginia.  *See Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 162 (4th Cir. 2021).  Because the orders at issue had been terminated, we held, it was clear that the proceedings "no longer present[ed] a live controversy," and that an appeal could not go forward unless some "exception" to the mootness doctrine applied.  *Id.*[4]  And because there was no reasonable prospect that the challenged restrictions would be reinstated, we finished, there was no such exception, requiring dismissal of the case as moot.  *Id.* at 162–66.

---

[3] The plaintiffs have questioned whether the Governor's March 2021 executive orders (EOs 8-21, 9-21, and 10-21), which left in place some gathering and social-distancing requirements, provided them with the full relief they sought.  But EO 12-21, issued a month later, expressly extinguished those orders, too, and the plaintiffs have not claimed that this total repeal provided anything less than the relief they requested in their amended complaint.  We thus focus solely on the legal landscape as of April 2021 and the issuance of EO 12-21 – which remains unchanged today.

[4] As we noted in *Lighthouse Fellowship Church*, the term "exception" in this context is a colloquialism; there of course can be no exceptions to Article III's jurisdictional limits. 20 F.4th at 162 n.4.  More formally, this doctrine describes some "limited circumstances where a case is not moot because the plaintiff continues to have a cognizable interest in the outcome that satisfies the Constitution's case-or-controversy requirement."  *Id.*

We thus turn to the single ground on which the plaintiffs rest in arguing against mootness: the voluntary cessation exception. That doctrine, we have explained, "traces to the principle that a party should not be able to evade judicial review . . . by temporarily altering questionable behavior." *Porter v. Clarke*, 852 F.3d 358, 364 (4th Cir. 2017) (quoting *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001)). Accordingly, "a civil action does not become moot when a defendant voluntarily ceases its allegedly improper behavior, if there is a reasonable chance that the behavior will resume." *Lighthouse Fellowship Church*, 20 F.4th at 162. And to avoid the litigation tactics at which the exception is aimed, we apply a "stringent" standard in assessing whether there is a reasonable chance of recurrence: A defendant claiming mootness based on the voluntary cessation of a challenged practice must show that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)); *see Porter*, 852 F.3d at 364.

That is an appropriately heavy burden, but the Governor has met it here. As in *Lighthouse Fellowship Church*, the COVID-19 executive orders at issue in this case were terminated over a year ago, along with all other pandemic-related safety measures affecting the plaintiffs. *See* 20 F.4th at 162–63. In the intervening months, the Governor has not imposed *any* new COVID-19 restrictions, let alone restrictions similar in scope or subject matter to those the plaintiffs challenge. Nor have the plaintiffs pointed to any conduct by the Governor suggesting that measures like gathering limits, capacity restrictions, or school

9

closures will be reimposed in the future. Instead, the Governor has echoed our observation in *Lighthouse Fellowship Church* that the advent of "vaccines and other measures to combat the virus" makes the likelihood of a recurrence still more remote. *Id.* at 164; *see* ECF No. 39 at 1 (Governor's letter in response to *Lighthouse Fellowship Church*). On this record, as in *Lighthouse Fellowship Church*, it is "entirely speculative" to assert that the Governor suddenly will see a need to reinstate COVID-19 restrictions "that have not been in place for more than a year." *See* 20 F.4th at 164.

That is especially so because the intervening year has seen deadly surges in COVID-19 cases caused by the Delta and Omicron variants. If there were any "reasonable chance," *id.* at 162, that the Governor might reimpose the safety measures at issue, in other words, then those waves of increased infection should have been the occasion for doing so. But they were not, and like other courts, we see that as a powerful signal that whatever course the COVID-19 pandemic takes, a return to restrictions like those challenged here is highly unlikely. *See, e.g.*, *Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 11–12 (1st Cir. 2021) (rejecting application of voluntary cessation doctrine where governor had not reimposed challenged restrictions "despite upticks in COVID-19 cases after he jettisoned" the challenged order); *Hawse v. Page*, 7 F.4th 685, 693 (8th Cir. 2021) (relying on fact that there were "no gathering restrictions in effect" despite "the emergence of the Delta variant" as evidence that restrictions were unlikely to return); *see also Church v. Polis*, No. 20-1391, 2022 WL 200661, at *5 & n.8 (10th Cir. Jan. 24, 2022) (similar given then-recent Omicron surge). We recognize that a few cases, decided earlier in the pandemic, found that "uncertainty

about the future course of the pandemic" militated against a finding of mootness. *See, e.g.*, *Cassell v. Snyders*, 990 F.3d 539, 546–47 (7th Cir. 2021) (applying voluntary cessation doctrine). But circumstances have changed, and with additional time, it has become clear that there is "no reasonable expectation" that COVID-19 restrictions like the ones to which the plaintiffs object will be reimposed. *See Lighthouse Fellowship Church*, 20 F.4th at 162 (internal quotation marks omitted).

The plaintiffs resist this conclusion, arguing that because the Governor has not formally ended West Virginia's state of emergency, he retains the power to close schools and businesses at his discretion, leaving them – like the plaintiffs in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020) – subject to a "constant threat" of renewed constitutional violations. We disagree. First, as we held in *Lighthouse Fellowship Church*, a governor's mere ability to reimpose challenged restrictions is not enough to show a reasonable chance of recurrence. *See* 20 F.4th at 164 & n.6 (rejecting "proposition that, if the government retains authority to resume its behavior, a case is never moot"). Rather, we clarified, the voluntary cessation analysis always requires a "factual inquiry" into the actual "likelihood of recurrence of the offending behavior." *Id.*; *see also Bos. Bit Labs*, 11 F.4th at 10 ("That the Governor has the power to issue executive orders cannot itself be enough to skirt mootness[.]").[5] Here, as we have explained, that factual inquiry

---

[5] In *Lighthouse Fellowship Church*, to be sure, Virginia's state of emergency had expired, whereas in this case, as the plaintiffs point out, West Virginia remains in a state of emergency. But we assumed, in *Lighthouse Fellowship Church*, that the governor (Continued)

11

yields a clear answer:  There is no reasonable chance of recurrence.  And second, *Roman Catholic Diocese of Brooklyn* – in which the Supreme Court reasoned that a challenge to COVID-19 limits on religious services did not become moot by virtue of a temporary loosening of occupancy restrictions – does not govern here.  In that case, the plaintiffs were challenging an executive order that remained in effect, *see* 141 S. Ct. at 68; *id.* at 74 (Kavanaugh, J., concurring), whereas in this one, the challenged orders were terminated over a year ago, *see Lighthouse Fellowship Church*, 20 F.4th at 163–64 (finding "night-and-day differences" from *Roman Catholic Diocese of Brooklyn* (internal quotation marks omitted)).

We thus hold that the plaintiffs' challenge to the Governor's long-since-terminated COVID-19 safety measures became moot on appeal, and that the voluntary cessation doctrine cannot keep it alive.  In such circumstances, our "customary practice" is to vacate the district court's judgment and remand with instructions to dismiss the case.  *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 14 F.4th 322, 327 (4th Cir. 2021).  Neither party argues that vacatur is inappropriate here, and we agree that we should follow our usual practice.  The plaintiffs were frustrated, by circumstances outside their control,

---

remained authorized to reissue COVID-19 restrictions – though he first would have to declare a new state of emergency – and nevertheless found this legal authority insufficient to show a reasonable expectation of recurrence. *See* 20 F.4th at 164 n.6.  Instead, consistent with our precedents, we insisted on an inquiry into the "practical likelihood of reenactment," *see Am. Legion Post 7 of Durham, N.C. v. City of Durham*, 239 F.3d 601, 606 (4th Cir. 2001), in which the expiration of the state of emergency was one fact, among many others, contributing to our holistic assessment of this probability, *see Lighthouse Fellowship Church*, 20 F.4th at 164 n.6.

from securing appellate review of an adverse decision, and that typically provides "sufficient reason to vacate" the judgment against them. *Catawba Riverkeeper Found.*, 843 F.3d at 592 (quoting *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 n.3 (1994)).

### III.

For the foregoing reasons, we vacate the district court's judgment and remand the case with instructions to dismiss the case as moot.

*VACATED AND REMANDED*
*WITH INSTRUCTIONS*