**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-1207

KARTHIKEYAN SAKTHIVEL; ARAVIND BABU KADIYALA; BISWAJIT MOHAPATRA; RAJENDRA SHARMA; SRINIVASA RAO MADUGULA; MUJEEB MOHAMMED; AZMATHULLA MOHAMMED; ASHOK KUMAR JAYAKUMAR; DIVYA BATHULA; CHETAN JOSHI; SREENISARGA GADDE; VENKATA SITA RAMAANJANEYUL BASATI; SRI LAKSHMI ALLURI; ARPIT KHURASWAR; RAHUL PATIL; MAMTA GUPTA; VENKATA SATYA VISHNU VARDHAN PARCHA,

Plaintiffs – Appellants,

v.

UR M. JADDOU, Director, U.S. Citizenship and Immigration Services,

Defendant – Appellee.

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Cameron McGowan Currie, Senior District Judge.  (3:18-cv-03194-CMC)

Argued:  December 6, 2022                        Decided:  April 11, 2023

Before KING and AGEE, Circuit Judges, and Henry E. HUDSON, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

**ARGUED:**  Bradley Bruce Banias, BANIAS LAW LLC, Charleston, South Carolina, for Appellants.   Vanessa Molina, UNITED  STATES  DEPARTMENT  OF  JUSTICE,

Washington, D.C., for Appellee.  **ON BRIEF:**  Brian M. Boynton, Acting Assistant Attorney General, William C. Peachey, Director, Glenn M. Girdharry, Assistant Director, Aaron S. Goldsmith, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

All seventeen Appellants in this case are beneficiaries of the category of nonimmigrant visas defined in 8 U.S.C. § 1101(a)(15)(H)(i)(b) ("H-1B Visas") of the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.* Appellants are challenging the United States Citizenship and Immigration Services' ("USCIS") revocation of their I-129 petitions for nonimmigrant worker status ("Initial H-1B Petitions") through which Appellants first became H-1B Visa beneficiaries. Some Appellants' Initial H-1B Petitions were revoked by USCIS automatically, while other Appellants' petitions were revoked through mailed revocation notices that were never received.

Appellants collectively brought their action in the District Court for the District of South Carolina seeking to set aside USCIS' revocation of their Initial H-1B Petitions as improper. Appellants initially alleged that USCIS had revoked each of their Initial H-1B Petitions through mailed revocation notices. After USCIS informed three of the Appellants that their Initial H-1B Petitions were revoked automatically, Appellants attempted to amend their Complaint and separate the action into two cases—one involving Appellants whose petitions were automatically revoked and one involving Appellants whose petitions were revoked by mailed revocation notices. Ultimately, the district court ruled that Appellants did not meet the permissive joinder requirements of Federal Rule of Civil Procedure 20(a) and dismissed mailed-revocation Appellants from the case. Only the case involving the automatic-revocation Appellants continued before the district court.

The remaining parties then cross motioned for summary judgment and the district court granted summary judgment for USCIS because the automatic-revocation Appellants did not show that any legal consequences had or will flow from their automatic revocations.

All Appellants appeal. We agree with the district court's joinder determination. However, we do not address the merits of the district court's summary judgment decision. We instead conclude that automatic-revocation Appellants' claim is moot and therefore vacate the district court's summary judgment decision and remand for their dismissal.

I.

H-1B Visas are available for companies who need employees to fill specialty occupations and authorize the employees to live and work in the United States on a temporary basis. 8 U.S.C. § 1101(a)(15)(H)(i)(b). Specialty occupation is defined as an occupation that requires "specialized knowledge" and a bachelor's degree or its equivalent. *Id.* § 1184(i). Each year, Congress makes 65,000 of these H-1B Visas available to employers. *Id.* § 1184(g). Employers seeking these specialized employees file petitions with USCIS. USCIS then holds a lottery and chooses the 65,000 petitions, commonly referred to as "Cap H-1B Visas." If an employer's petition is selected and USCIS grants the Cap H-1B Visa, a beneficiary can acquire valid status for up to six years. *See* 8 C.F.R. § 214.2(h)(15)(ii)(B) ("The alien's total period of stay may not exceed six years."); 8 U.S.C. § 1184(g)(4).

This case arose from circumstances related to a largescale H-1B Visa fraud scheme perpetrated by Appellants' former employer, EcomNets. EcomNets applied for and

4

obtained Appellants' Initial H-1B Visas, however, it defrauded the United States in the process by filing fraudulent labor applications to the United States Department of Labor. EcomNets misrepresented the locations where Appellants were going to be assigned to work by fraudulently stating that they would be working in remote rural locations. EcomNets actually placed Appellants at locations that would demand much higher wages, such as cities, but only paid Appellants the wages commensurate with the rural locations, keeping the difference. EcomNets' owners were indicted for their fraudulent scheme and the business was shut down with the Government's knowledge in 2016. The Appellants are all citizens of India and deny any knowledge of the fraud or misrepresentations in the applications.

After EcomNets was shut down, USCIS began the process of revoking Appellants' Initial H-1B Petitions. USCIS records indicate that it mailed notices of intent to revoke ("NOIRs") to EcomNets for most Appellants. At the time these NOIRs were mailed, USCIS was aware of EcomNets' shut down and that the addresses to which the NOIRs were mailed were no longer valid. USCIS was also on notice that each Appellant had lawfully moved on to a new employer. USCIS received notice through H-1B Portability Petitions filed by Appellants' new employers. Many, if not all, NOIRs mailed to EcomNets were returned to USCIS as undeliverable. Thereafter, USCIS revoked Appellants' Initial H-1B Petitions.

Like the NOIRs, USCIS also sent final revocation notices for each Appellants' Initial H-1B Petition only to EcomNets. Similarly, all of these final notices were returned

5

as undeliverable. Appellants never received direct notice and only learned of the revocations through other means.

As was discovered after this litigation ensued, instead of receiving mailed revocation notices, at least three Appellants had their Initial H-1B Petitions revoked automatically. This occurred because those Appellants' new employer filed for a new H-1B Portability Petition on their behalf, and their previous employer filed a written letter to USCIS stating that it no longer employed Appellants and requested that USCIS withdraw Appellants' petitions.[1] 8 C.F.R. § 214.2(h)(11)(ii) provides for "immediate and automatic" revocation of an employee's H-1B petition if the employer who obtained the original H-1B petition "files a written withdrawal of the petition." Accordingly, pursuant to the regulation, USCIS considered these H-1B petitions immediately and automatically revoked upon receipt of the former employer's written withdrawal letter.

At the outset of this litigation, all Appellants anticipated that USCIS would rely on the revocation of their Initial H-1B Petitions to revoke or deny subsequent H-1B Portability Petitions or immigrant visa petitions ("I-140 Petitions") filed by Appellants, and related

---

[1] Federal statutory law authorizes an alien who previously has been issued an H-1B Visa or otherwise provided nonimmigrant status under the H-1B visa program to "accept new employment upon the filing" of a new petition on behalf of the employee by a new prospective employer. 8 U.S.C. § 1184(n)(1). This is valid so long as, among other things, the employee "has not been employed without authorization in the United States before the filing of such petition," *id.* § 1184(n)(2)(C); and remains employed with the new prospective employer "until the new petition is adjudicated," *id.* § 1184(n)(1). Federal law grants the employee a sixty-day grace period or until the existing validity period ends, whichever is shorter, to avail him or herself of H-1B's Portability Provision following "cessation of employment on which the alien's classification was based." 8 C.F.R. § 214.1(1)(2).

6

extensions available to H-1B beneficiaries who have approved I-140 Petitions. Appellants argued that without their initial H-1B Petitions, Appellants would have to win the lottery again in order to receive another Cap H-1B Visa, something that is not guaranteed.

Based on these common factual allegations, Appellants initially sought to bring suit in the district court jointly, totaling seventeen plaintiffs. In the original Complaint, all seventeen Appellants alleged USCIS revoked their visas via mailed notice. And, in a second motion to dismiss, USCIS agreed that it revoked all seventeen Appellants' visas through notice. However, in a third motion to dismiss, USCIS for the first time stated that it issued automatic revocations to three of the Appellants.

Shortly thereafter, Appellants sought to amend their Complaint in order to differentiate between the two types of plaintiffs: (1) those based on the automatic revocations and (2) those based on notice revocations. The district court denied the motion, holding that the three automatic-revocation Plaintiffs could move forward together to challenge those revocations. However, the district court concluded that the fourteen other notice-based revocation Plaintiffs could not be joined under Federal Rule of Civil Procedure 20(a) because the two sets of plaintiffs were seeking relief under two different legal theories, and the claims were more appropriate to continue as two separate actions. The district court concluded that that the automatic-revocation Plaintiffs were the appropriate group to move forward in the litigation and the notice-revocation Plaintiffs were eventually dismissed without prejudice.

Subsequently, the automatic-revocation Plaintiffs moved for summary judgment, arguing USCIS acted arbitrarily and capriciously, in violation of the Administrative

Procedure Act ("APA"), in deeming their Initial H-1B Petitions revoked upon its receipt of the withdrawal letter by their previous employer. USCIS opposed Plaintiffs' motion and also moved for summary judgment, arguing that the federal regulation required USCIS' automatic revocation upon receipt of the letter, substantial evidence supported such action, and Plaintiffs never identified any adverse legal consequences resulting from USCIS' revocation. The district court granted USCIS' motion for summary judgment and held that USCIS' automatic revocations did not constitute reviewable final agency action because Plaintiffs did not show that the action was one from which legal consequences had or will flow. Thus, the district court held that USCIS did not act arbitrarily or capriciously in automatically revoking Plaintiffs' Initial H-1B Petitions.

Importantly, at some point during this litigation, automatic-revocation Appellants received new H-1B petitions through the lottery system and were again counted against the cap. *See* Opening Br. 19 ("[T]he Agency has since allowed Appellants Sakthivel, Gadde, and Joshi to 'win' new cap H1B petitions through recent lotteries.").

## II.

### A.

Automatic-revocation Appellants argue the district court erred by granting USCIS' motion for summary judgment and by doing so on an allegedly incomplete administrative record. However, we need not address these arguments because we conclude that automatic-revocation Appellants' claim is moot and they therefore lack standing. As a consequence, we have no Article III jurisdiction.

8

The Court is limited to deciding "cases" and "controversies," which means, in part, that the Court may only decide cases in which the plaintiff has Article III standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (citations omitted). To establish Article III standing, a plaintiff must have an injury that is: (1) "concrete, particularized, and actual or imminent;" (2) "fairly traceable to the challenged action;" and (3) "redressable by a favorable ruling." *Id.* at 409 (citations omitted). The plaintiff bears the burden of establishing standing. *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017).

Critically, the Court has a special obligation to satisfy itself of this jurisdictional element throughout the litigation. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). It is not enough that a plaintiff has standing at the start of a lawsuit—he must have standing at all stages of the proceedings. For that reason, the mootness doctrine prevents the Court from "advising on legal questions when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Eden, LLC v. Justice*, 36 F.4th 166, 169 (4th Cir. 2022) (cleaned up). Stated differently, the Court "may only decide cases that matter in the real world at the time that [the Court] decides them." *Id.* at 170 (cleaned up).

Automatic-revocation Appellants allege that USCIS arbitrarily and capriciously revoked their initial H-1B petition and accompanying cap-exempt status. USCIS, for its part, responds that the automatic revocations did not result in a loss of cap-exempt status because the automatic-revocation Appellants had successfully transferred their employment pursuant to 8 U.S.C. § 1184(n)(1). Notably, automatic-revocation Appellants do not allege that the revocations resulted in their deportation or unlawful status. Indeed, it

9

appears uncontested that all three automatic-revocation Appellants currently lawfully reside in the United States. Instead, automatic-revocation Appellants allege that they were harmed because without cap-exempt status, they must reenter the lottery to obtain a transfer or extension of their H-1B visas, possibly causing long delays and a real potential for not "winning" the lottery. But even if the loss of such status may have been a concrete injury at the outset of this litigation, that harm is no longer a possibility.

At some point during this litigation, automatic-revocation Appellants received new H-1B Visas through the lottery system and were again counted against the cap. The statute governing cap-exemption provides that any noncitizen "who has already been counted, within the 6 years prior to the approval of a [H-1B petition], toward the numerical limitations of [the cap] shall not again be counted toward those limitations[.]" 8 U.S.C. § 1184(g)(7). Because automatic-revocation Appellants won visas through the lottery after their revocation, they now unquestionably possess cap-exempt status. Therefore, the question of whether their initial H-1B visa and cap-exempt status were revoked is not relevant to their current status. Accordingly, any harm that they may have incurred from the initial revocation is moot.[2]

---

[2] To the extent that automatic-revocation Appellants argue that they will suffer harm because USCIS *might* deny their adjustment of status petitions due to the prior revocation, this alleged harm is too speculative to satisfy the Article III standing requirements. *Clapper*, 568 U.S. at 409 ("Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." (citations omitted)).

Because we are limited to deciding cases that "matter in the real world at the time we decide them," *Eden*, 36 F.4th at 171 (cleaned up), and cannot advise on legal questions when the "parties lack a legally cognizable interest in the outcome," *id.* at 170, we vacate the district court's summary judgment decision and remand the case to the district court to dismiss automatic-revocation Appellants for lack of Article III standing.[3]

## B.

Additionally, Appellants argue that the district court abused its discretion in denying the fourteen notice-revocation Appellants leave to file an amended complaint and ruling that they failed to satisfy the joinder requirements under Federal Rule of Civil Procedure 20(a). Rule 15(a) provides that leave to amend a pleading should be freely given "when justice so requires." *Balas v. Huntington Ingalls Indus.*, 711 F.3d 401, 409 (4th Cir. 2013). "[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). Under Rule 20(a), permissive joinder of plaintiffs is proper if (1) the plaintiffs assert a right to relief arising out of the same transaction or occurrence and (2) some question of law or fact common to all the plaintiffs will arise in the action. District courts have wide discretion

---

[3] This conclusion applies only to automatic-revocation Appellants because there is no indication in the record that notice-revocation Appellants received subsequent H-1B Visas and cap-exempt status.

11

over permissive joinder. *See Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (2007). In determining whether to grant a motion to amend to join additional plaintiffs, a district court "must consider both the general principles of amendment provided by Rule 15(a) and also the more specific joinder provisions of Rule 20(a)." *Hinson v. Norwest Fin., S.C., Inc.*, 239 F.3d 611, 618 (4th Cir. 2001).

Here, the district court did not abuse its discretion in declining to allow Appellants to bring their suit collectively. Although all Appellants were already a part of the lawsuit and did not have to be joined through an amended complaint, they sought in their proposed amended complaint, for the first time, to divide into two separate groups. This proposed categorization completely changed the claims and was effectively an attempt to join a new category of plaintiffs. The district court therefore properly treated this amendment as a joinder and determined that the claims of the two distinct categories of plaintiffs should not be collectively joined in a single action because they were challenging USCIS' revocations on two different substantive grounds, and thus, the claims rested on wholly different legal theories. As the district court noted, declining to allow the claims to proceed collectively does not preclude the other plaintiffs who were not joined from pursuing relief in separate lawsuits. The district court was in the best position to assess whether to permissively join the newly established groups of plaintiffs under Rule 20(a), and it did not abuse its discretion in finding that it was not appropriate to do so. Therefore, we affirm the district court's ruling.

* * * *

12

Accordingly, we affirm the district court's denial of Appellants' motion to amend, vacate the district court's summary judgment decision, and remand for dismissal of automatic-revocation Appellants for lack of Article III standing.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*