

# NUMBER 13-21-00017-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

STAND FOR SOMETHING
GROUP LIVE, LLC
D/B/A THE RAIL CLUB LIVE, ET AL.,                    Appellants,

v.

GREG ABBOTT, AS GOVERNOR
OF TEXAS; TEXAS ALCOHOLIC
BEVERAGE COMMISSION; AND
BENTLEY NETTLES,                                      Appellees.

On appeal from the 200th District Court
of Travis County, Texas.

# MEMORANDUM OPINION

Before Chief Justice Contreras and Justices Hinojosa and Silva
Memorandum Opinion by Justice Hinojosa

Appellants Stand for Something Group Live, LLC, d/b/a The Rail Club Live, et al.

(the Bars) filed suit against appellees, Texas Governor Greg Abbott (the Governor), the Texas Alcoholic Beverage Commission (TABC), and TABC executive director Bentley Nettles. The suit challenges several executive orders issued by the Governor and enforced by TABC that restricted the ability of people to patronize bars during the early stages of the COVID-19 pandemic. The Bars appeal the trial court's orders denying their application for a temporary injunction and granting appellees' plea to the jurisdiction.

In four issues, the Bars argue that: (1) their claims challenging rescinded executive orders are not moot; (2) they have standing to sue appellees; (3) sovereign immunity is waived as to each appellee; and (4) the trial court should have granted the Bars' request for a temporary injunction. We dismiss as moot the Bars' appeal as it relates to their declaratory and injunctive relief claims. We affirm the trial court's dismissal of the Bars' regulatory takings claim.

## I. BACKGROUND[1]

### A. Texas Disaster Act

The Texas Disaster Act (Disaster Act) establishes a detailed, comprehensive framework that, in the case of a disaster, allocates powers, duties, and responsibilities across various levels of state government and multiple agencies. *See* TEX. GOV'T CODE ANN. §§ 418.001–.307; *see also Hous. Cmty. Coll. v. Hall Law Grp., PLLC*, No. 01-20-00673-CV, 2021 WL 2369505, at *11 (Tex. App.—Houston [1st Dist.] June 10, 2021, pet. denied) (mem. op.). One of the statute's stated purposes is to "clarify and strengthen the roles of the governor, state agencies, the judicial branch of state government, and local

---

[1] This case is before the Court on transfer from the Third Court of Appeals in Austin pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

governments in prevention of, preparation for, response to, and recovery from disasters." TEX. GOV'T CODE ANN. § 418.002(4).

If the Governor finds that a disaster has occurred or that occurrence or threat of a disaster is imminent, he may declare a state of disaster by either executive order or proclamation. *Id.* § 418.014(a). The state of disaster may not continue for more than thirty days unless renewed by the Governor. *Id.* § 418.014(c). However, "[t]he legislature by law may terminate a state of disaster at any time." *Id.* The Disaster Act authorizes the Governor (1) to issue executive orders, proclamations, and regulations that have the "force and effect of law"; (2) to amend or rescind the executive orders, proclamations, and regulations; and (3) to suspend certain statutory provisions if compliance with those provisions would hinder or delay actions necessary to cope with the disaster. *Id.* §§ 418.012, 418.016(a).

## B.    Governor's Executive Orders

On March 13, 2020, the Governor issued a statewide disaster declaration, certifying that "the novel coronavirus (COVID-19) poses an imminent threat of disaster for all Texas Counties," and he has renewed that proclamation every month since. *See In re State*, 602 S.W.3d 549, 550–51 (Tex. 2020) (orig. proceeding) (noting that the first reported case of COVID-19 in the United States was January 2020 and that the virus can cause extreme symptoms, requiring hospitalization, use of ventilator, and long stays in intensive care unit). In addition, the Governor has issued a series of executive orders for the stated purpose of, among other things, "protecting the health and safety of Texans, ensuring uniformity throughout Texas, and achieving the least restrictive means of

3

combating the evolving threat to public health by adjusting social-distancing and other mitigation strategies." *See, e.g.*, The Governor of the State of Tex., Exec. Order GA-28, 45 TEX. REG. 4589 (2020). The Governor issued several executive orders between March 19, 2020, and June 26, 2020, that included stay-at-home provisions, including restrictions on the ability of people to patronize and be served in bars. The first executive order that the Bars found objectionable was GA-28, which provided that:

> People shall not visit bars or similar establishments that hold a permit from the Texas Alcoholic Beverage Commission (TABC) and are not restaurants as defined above in paragraph number 6;[2] provided, however, that the use by such bars or similar establishments of drive[-through], pickup, or delivery options for food and drinks is allowed to the extent authorized by TABC.

*Id.* at 4590.

Exercising its purported authority under § 11.614 of the alcoholic beverage code (allowing TABC to issue emergency orders suspending alcoholic beverage licenses and permits), TABC issued temporary suspensions to establishments that violated the Governor's executive orders. *See* TEX. ALCO. BEV. CODE ANN. § 11.614. At least three of the Bars were subject to temporary emergency suspensions of their licenses for operating in violation of GA-28, which have since expired. On September 17, 2020, the Governor issued executive order GA-30, which renewed the restriction on bar patronage. *See* The Governor of the State of Tex., Exec. Order GA-30, § 8, 45 TEX. REG. 6821, 6823 (2020).

**C.  The Bars' Suit**

On November 9, 2020, the Bars filed their live pleading[3] seeking declarations that

---

[2] Restaurants are defined by the order as food establishments "that have less than 51 percent of their gross receipts from the sale of alcoholic beverages." The Governor of the State of Tex., Exec. Order GA-28, § 6, 45 TEX. REG. 4589, 4590 (2020).

[3] The Bars' live pleading is their second amended petition. The Bars attached several documents

4

the enforcement of GA-28 and GA-30 violate the Texas Constitution's (1) prohibition against retroactive laws; (2) takings clause; (3) equal protection clause; (4) free assembly clause; and (5) substantive due course of law provision. The Bars requested temporary and permanent injunctive relief enjoining enforcement of GA-28, GA-30, and § 11.614 of the alcoholic beverage code. Finally, the Bars sought monetary damages for their takings claim only.

While the suit was pending, the Governor issued executive order GA-32, which provided county judges the discretion to open bars for in-person services, depending on whether their counties were located within an area with high COVID-19 hospitalizations. *See* The Governor of the State of Tex., Exec. Order GA-32, § 7, 45 TEX. REG. 7348, 7348–49 (2020).

Appellees filed a plea to the jurisdiction, arguing that (1) the Bars' challenges to executive orders that are no longer in effect are moot, as are the claims brought by the Bars that were permitted to receive customers in person under GA-32; (2) the Bars lacked standing to sue the Governor; (3) the Bars' claims were entirely barred by sovereign immunity; and (4) only the Texas Supreme Court had authority to enjoin the Governor. Appellees also argued that the Bars failed to establish any of the elements of a temporary injunction claim.

After a hearing, at which the trial court received evidence on the Bars' request for a temporary injunction, the trial court signed orders denying the Bars' application for a temporary injunction and granting appellees' plea to the jurisdiction. The Bars now

---

to their pleading, including the challenged executive orders, TABC enforcement records, and the declarations of the Bars' owners. The Bars' original petition was filed on August 25, 2020.

appeal.

**D.    Intervening Orders**

On March 2, 2021, during the pendency of this appeal, the Governor issued GA-34, which superseded GA-32, effective March 10, 2021. *See* The Governor of the State of Tex., Exec. Order GA-34, 45 TEX. REG. 1567, 1568 (2020). In GA-34, the Governor noted that "COVID-19 hospitalizations and the rate of new COVID–19 cases have steadily declined due to" the voluntary efforts of Texans, including their "adherence to safe practices like social distancing, hand sanitizing, and use of face coverings." *Id.* GA-34 lifted the COVID–19 related operating limits on businesses, including the prohibition on visiting bars. *See id.* Appellees have placed no restriction on bar patronage since.

### III.    MOOTNESS

As a threshold issue, we must address appellees' argument that the Bars' claims for injunctive and declaratory relief have been rendered moot by subsequent executive orders allowing for the full reopening of bars in Texas.

**A.    Standard of Review & Applicable Law**

"Under the Texas Constitution's separation-of-powers doctrine, courts lack jurisdiction to issue an advisory opinion, the 'distinctive feature' of which is that it 'decides an abstract question of law without binding the parties.'" *Abbott v. Mexican Am. Legis. Caucus, Tex. House of Representatives*, 647 S.W.3d 681, 689 (Tex. 2022) (quoting Tex. *Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993)); *see* TEX. CONST. art. II, § 1. Therefore, an appellate court lacks jurisdiction to issue an opinion on a moot controversy. *See Heckman v. Williamson County*, 369 S.W.3d 137, 162 (Tex. 2012). "A

6

case becomes moot if, since the time of filing, there has ceased to exist a justiciable controversy between the parties—that is, if the issues presented are no longer 'live,' or if the parties lack a legally cognizable interest in the outcome." *Id.* (citations omitted). In other words, "a case is moot when the court's action on the merits cannot affect the parties' rights or interests." *Id.*

"A case can become moot at any time, including on appeal." *State ex rel. Best v. Harper*, 562 S.W.3d 1, 6 (Tex. 2018). "[A]ppellate courts have a duty to assess their own jurisdiction sua sponte . . . and we may ascertain facts necessary to the exercise of our jurisdiction." *Ward v. Lamar Univ.*, 484 S.W.3d 440, 450–51 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (internal citation omitted); *see* TEX. GOV'T CODE ANN. § 22.220(c) ("Each court of appeals may, on affidavit or otherwise, as the court may determine, ascertain the matters of fact that are necessary to the proper exercise of its jurisdiction."). But a case "is not rendered moot simply because some of the issues become moot during the appellate process." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). "If only some claims or issues become moot, the case remains 'live,' at least as to other claims or issues that are not moot." *Harper*, 562 S.W.3d at 6. We review the question of mootness de novo. *Matthews ex. Rel. M.M. v. Kountze Indep. Sch. Dist.*, 484 S.W.3d 416, 418 (Tex. 2016).

## B.    Analysis

The Bars seek declarations that the Governor's rescinded executive orders GA-28 and GA-30, as well as TABC's related enforcement actions violate various provisions of the Texas Constitution. They also seek to enjoin the enforcement of such orders. As noted

7

above, the Governor issued an executive order on March 2, 2021, lifting all restrictions on the operation of bars. *See* Exec. Order GA-34, 45 TEX. REG. at 1568. Over a year and a half later, the Governor and TABC have not reinstated any restrictions on bar patronage.

In *Ector County Alliance of Businesses v. Abbott*, the Eastland Court of Appeals concluded that a challenge to these very same executive orders was moot. No. 11-20-00206-CV, 2021 WL 4097106, at *1 (Tex. App.—Eastland Sept. 9, 2021, no pet.) (mem. op.). In that case, an organization representing three bar establishments alleged that the executive orders restricting bar patronage were unconstitutional and that the Governor "acted ultra vires when he purported to suspend and decree laws in those orders." *Id.* at *6. The court noted that "the complained-about executive orders have been superseded and all restrictions on people entering bars for in-person service have been lifted." *Id.* The court further noted that none of the establishments were subject to a pending enforcement action for the violation of the superseded orders.[4] *Id.* Therefore, the court concluded that the "request for declarations that [the superseded executive orders] are unconstitutional and that the Governor acted ultra vires when he issued these orders and for an injunction that prohibits the enforcement of those superseded orders can no longer affect the parties' interests."[5] *Id.*

---

[4] The same is true in this case. TABC temporarily suspended the operations of three of the Bars for operating in violation of GA-28. Those suspensions have since expired. One of the Bars, Stand for Something Group Live, LLC d/b/a the Rail Club Live (Rail Club) had its alcoholic beverage permit later cancelled, primarily for a violation unrelated to the Governor's executive orders. The record of the administrative proceeding filed with our Court indicates that the Rail Club allowed customers to bring their own alcoholic beverages onto the premises, an action prohibited by § 28.06 of the alcoholic beverage code. *See* TEX. ALCO. BEV. CODE ANN. § 28.06. This provision subjects violators to mandatory cancellation of their permit. *See id.* § 28.06(c). We are unaware of any pending enforcement actions related to the superseded executive orders.

[5] The court held that prospective claims challenging the constitutionality of the Texas Disaster Act (Disaster Act) itself were not moot because "the Governor and the State did not meet their heavy burden

Likewise, we conclude that the Bars' claims seeking to declare the Governor's superseded executive orders unconstitutional and to enjoin their enforcement do not present a justiciable controversy between the parties. *See Heckman*, 369 S.W.3d at 162. Nevertheless, the Bars respond that the capable-of-repetition-yet-evading-review exception to mootness applies. They argue that "the Governor's pattern of issuing new executive orders every few weeks should not inoculate TABC from lawsuits based on amendments of complained-of executive orders."

The capable-of-repetition-yet-evading-review exception, which only applies in rare circumstances, requires a plaintiff to prove that: "(1) the challenged action was too short in duration to be litigated fully before the action ceased or expired; and (2) a reasonable expectation exists that the same complaining party will be subjected to the same action again." *City of Georgetown v. Putnam*, 646 S.W.3d 61, 73 (Tex. App.—El Paso 2022, pet. filed) (quoting *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001)). "The mere physical or theoretical possibility that the same party may be subjected to the same action again is not sufficient to satisfy the test." *City of Dallas v. Woodfield*, 305 S.W.3d 412, 419 (Tex. App.—Dallas 2010, no pet.) (citing *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam)).

Many courts across the country have declined to apply a mootness exception to

---

to make it absolutely clear that restrictions on people patronizing, and being served in, bars will not be reimposed through a future executive order." *Ector Cnty. All. of Bus'es v. Abbott*, No. 11-20-00206-CV, 2021 WL 4097106, at *7 (Tex. App.—Eastland Sept. 9, 2021, no pet.) (mem. op.). Nevertheless, the court dismissed those claims on standing grounds. *Id.* at *10. The Bars in this case do not bring a similar challenge to the Disaster Act. Nevertheless, to the extent that the Bars' claims seek prospective relief and as discussed below, we reach a different conclusion concerning whether appellees are likely to impose future restrictions on people's ability to patronize bars.

similar challenges to rescinded COVID–19 restrictions, reasoning that despite the deadly surges in COVID–19 cases caused by the Delta and Omicron variants, there were no indications that similar restrictions would be reimposed.[6] *See, e.g.*, *Brach v. Newsom*, 38 F.4th 6, 11–12 (9th Cir. 2022) (concluding that challenge to restrictions against in-school learning did not trigger capable-of-repetion-yet-evading-review mootness exception); *Eden, LLC v. Justice*, 36 F.4th 166, 171 (4th Cir. 2022) (noting that "the advent of vaccines and other measures to combat the virus makes the likelihood of a recurrence still more remote" (internal quotation omitted)). Here, despite the intervening surges of COVID–19 cases, the Governor and TABC have shown no indication that they will order similar restrictions on bar patronage in the future. "[W]e see that as a powerful signal that

---

[6] Indeed, this appears to be the overwhelmingly prevailing position at this stage of the pandemic. *See Resurrection Sch. v. Hertel*, 35 F.4th 524, 529–30 (6th Cir. 2022) (concluding challenge to rescinded mask mandate was moot); *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 163 (4th Cir. 2021) (holding that mootness exception did not rescue otherwise moot challenge to early COVID-19 pandemic restrictions on public gatherings); *Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 11–12 (1st Cir. 2021) (rejecting application of voluntary cessation doctrine where governor had not reimposed challenged restrictions "despite upticks in COVID-19 cases after he jettisoned" the challenged order); *County of Butler v. Governor of Penn.*, 8 F.4th 226, 231 (3d Cir. 2021) (explaining that plaintiffs failed to show that challenged orders were capable of repetition yet evading review and that, to the contrary, defendants "represented that the public health landscape has so fundamentally changed that 'what we were facing in this case is not what you would be facing going forward'" (cleaned up)); *Hawse v. Page*, 7 F.4th 685, 693 (8th Cir. 2021) (relying on fact that there were "no gathering restrictions in effect" despite "the emergence of the Delta variant" as evidence that restrictions were unlikely to return); *Spell v. Edwards*, 962 F.3d 175, 180 (5th Cir. 2020) (concluding that challenge to expired Louisiana stay-at-home order was not subject to mootness exception); *Beshear v. Acree*, 615 S.W.3d 780, 824 (Ky. 2020) (declining to review the Governor's rescinded COVID-19 restrictions on the plaintiff's racetrack business because pandemic responses constantly evolve as knowledge is gained and because of "ongoing attempts to balance that knowledge with keeping the economy open"); *N.C. Bowling Proprietors Ass'n v. Cooper*, 847 S.E.2d 745, 746 (N.C. 2020) (dismissing a lawsuit brought by bowling alleys as moot without considering possible exceptions after the Governor allowed the businesses to reopen); *C.R. Def. Firm, P.C. v. Wolf*, 226 A.3d 569, 569–70 (Pa. 2020) (per curiam) (dismissing a challenge to an emergency order that closed the plaintiff law firm's "physical operations" once that order was modified to exempt legal services); *see also Denver Bible Church v. Polis*, No. 20-1391, 2022 WL 200661, at *5 & n.8 (10th Cir. Jan. 24, 2022) (concluding that exceptions to mootness did not apply because Colorado had established that it was not reasonably likely to reinstate the challenged restrictions against plaintiffs); *Pleasant View Baptist Church v. Beshear*, 838 Fed. App'x. 936, 938 (6th Cir. 2020) (concluding claim challenging expired executive order was moot and not capable of repetition).

whatever course the COVID–19 pandemic takes, a return to restrictions like those challenged here is highly unlikely." *Eden*, 36 F.4th at 171.

We recognize that a few cases, decided earlier in the pandemic, found that "uncertainty about the future course of the pandemic" militated against a finding of mootness. *See Cassell v. Snyders*, 990 F.3d 539, 546–47 (7th Cir. 2021) (applying voluntary cessation exception to mootness regarding stay-at-home orders); *see also Ector Cnty. All.*, 2021 WL 4097106, at *7 (concluding that "the Governor and the State did not meet their heavy burden to make it absolutely clear that restrictions on people patronizing, and being served in, bars will not be reimposed through a future executive order"). However, as time has passed, it has become clear that there is "no reasonable expectation" that COVID-19 restrictions like the ones to which the Bars object will be reimposed. *See Putnam*, 646 S.W.3d at 73.

Because the Bars' claims for declaratory and injunctive relief are moot and no mootness exception applies, we lack subject-matter jurisdiction over the appeal from the dismissal of those claims. *See Heckman*, 369 S.W.3d at 162; *see also Riley Drive Entm't I, Inc. v. Reynolds*, 970 N.W.2d 289, 300–02 (Iowa 2022) (determining that challenge to expired restrictions on bars and taverns was moot); *State v. City of Austin*, No. 03-20-00619-CV, 2021 WL 1313349, at *8 (Tex. App.—Austin Apr. 8, 2021, no pet.) (mem. op.) (concluding that the State's challenge to the City of Austin's expired pandemic orders was moot).

## IV. IMMUNITY

As previously noted, "[i]f only some claims or issues become moot, the case

11

remains 'live,' at least as to other claims or issues that are not moot." *Harper*, 562 S.W.3d at 6. Our conclusion regarding mootness does not apply to the Bars' claim for damages resulting from a regulatory taking. *See Lara*, 52 S.W.3d at 185 (concluding that claims for declaratory and injunctive relief were moot, but the damages claim was not). Therefore, we address that part of the Bars' third issue arguing that the trial court erred in concluding that the Bars did not plead a valid takings claim.

## A.      Standard of Review & Applicable Law

A plea to the jurisdiction is a dilatory plea; its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction over a pleaded cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Subject matter jurisdiction is a question of law; therefore, when the determinative facts are undisputed, we review the trial court's ruling on a plea to the jurisdiction de novo. *Id.* Sovereign immunity deprives a trial court of jurisdiction over lawsuits in which the State and its various agencies have been sued unless immunity is waived by the Legislature.[7] *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011); *see Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012). Therefore, sovereign immunity is properly asserted in a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 225–26.

A plaintiff has the burden to affirmatively demonstrate the trial court's jurisdiction,

---

[7] TABC, a state agency, is protected by sovereign immunity. Likewise, sovereign immunity protects the Governor and Nettles, who have been sued in their official capacities. *See Tex. S. Univ. v. Villarreal*, 620 S.W.3d 899, 904 (Tex. 2021).

which encompasses the burden of establishing a waiver of a governmental entity's immunity from suit. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). "When a defendant challenges jurisdiction, a court 'is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised.'" *Id.* (quoting *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555). This is true even when the jurisdictional issue intertwines with the merits of the case. *Id.* When, as here, a jurisdictional plea challenges the pleadings, we determine if the plaintiff has alleged facts affirmatively demonstrating subject matter jurisdiction. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). In doing so, "[w]e construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Miranda*, 133 S.W.3d at 226.

Article I, § 17 of the Texas Constitution provides: "No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." TEX. CONST. art. I, § 17(a). "Generally, plaintiffs seeking recovery for a taking must prove the government 'intentionally took or damaged their property for public use, or was substantially certain that would be the result.'" *Harris Cnty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 799 (Tex. 2016) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 808 (Tex. 2005)). "Sovereign immunity does not shield the government from liability for compensation under the takings clause." *Id.* "While a valid takings claim waives [sovereign] immunity, a plaintiff must plead facts invoking that waiver." *City of Socorro v. Campos*, 510 S.W.3d 121, 127 (Tex. App.—El Paso 2016, pet. denied). "[D]etermining whether a taking has occurred is a question of law for the

13

court." *City of Austin v. Travis Cnty. Landfill Co.*, 73 S.W.3d 234, 241 (Tex. 2002). "Texas takings jurisprudence is materially similar to federal takings jurisprudence. . . ." *City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501, 517 (Tex. App.—Austin 2014, no pet.); *see Sheffield Dev. Co. v. City of Glenn Heights*, 140 S.W.3d 660, 674 (Tex. 2004) ("[W]e do look to federal takings cases for guidance in applying our own constitution.").

## B.     Categorical Regulatory Taking

The Bars pleaded that the Governor's executive orders "create[] a regulatory taking by preventing [the Bars] from conducting materially all business operations on their property."

A regulatory taking can be either categorical or non-categorical. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005). There are two types of regulatory actions that are categorical takings: (1) "where government requires an owner to suffer a permanent physical invasion of her property—however minor," and (2) "regulations that completely deprive an owner of all economically beneficial use of her property." *Id.* (internal citations and alterations omitted). The Bars have not pleaded a categorical takings claim because the challenged executive orders do not constitute a permanent physical invasion of the Bars' property, nor are the Bars precluded from all economically beneficial use of their property. The temporary restrictions expressly permitted the Bars to continue to operate through drive-through, pickup, or delivery options. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 330 (2002) (explaining that a per se, or categorical, taking occurs in "the extraordinary circumstance when *no* productive or economically beneficial use of land is permitted"); *Sheffield*, 140 S.W.3d at 671 (same).

14

## C.      Non-Categorical Regulatory Taking—The *Penn Central* Factors

Outside of a categorical taking, a regulatory taking may still be found by considering what is known as the *Penn Central* factors: "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Murr v. Wisconsin*, 137 S. Ct. 1933, 1943 (2017) (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)). "The first factor . . . merely compares the value that has been taken from the property with the value that remains in the property." *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 935–36 (Tex. 1998). We do not usually consider the loss of anticipated profits in analyzing this factor. *Id.* at 936. With respect to the second factor, "[t]he existing and permitted uses of the property constitute the 'primary expectation' of the landowner that is affected by regulation." *Id.* Regarding the third factor, a regulation is less likely to be considered a taking when "interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good," in contrast to a situation in which the "interference with property can be characterized as a physical invasion by government." *Penn Cent.*, 438 U.S. at 124. As recognized by one court, the third factor "is particularly relevant in cases involving regulations designed to counter public threats like the COVID-19 pandemic." *Underwood v. City of Starkville*, 538 F. Supp. 3d 667, 679 (N.D. Miss. 2021).

For the reasons that follow, we join courts across the country that have uniformly concluded that the government's temporary restriction of business as a safeguard against the spread of COVID-19 does not constitute a regulatory taking. *See Bojicic v. DeWine*,

15

No. 21-4123, 2022 WL 3585636, at *9 (6th Cir. Aug. 22, 2022); *Glow In One Mini Golf, LLC v. Walz*, 37 F.4th 1365, 1375 (8th Cir. 2022); *Underwood*, 538 F. Supp. 3d at 678–81; *Amato v. Elicker*, 534 F. Supp. 3d 196, 212–15 (D. Conn. 2021); *Metroflex Oceanside LLC v. Newsom*, 532 F. Supp. 3d 976, 981–82 (S.D. Cal. 2021); *TJM 64, Inc. v. Harris*, 526 F. Supp. 3d 331, 336–39 (W.D. Tenn. 2021); *Flint v. Kauai Co.*, 521 F. Supp. 3d 978, 988–93 (D. Haw., 2021); *Daugherty Speedway, Inc. v. Freeland*, 520 F. Supp. 3d 1070, 1075–78 (N.D. Ind. 2021); *Antietam Battlefield KOA v. Hogan*, 501 F. Supp. 3d 339, 347 (D. Md. 2020), *aff'd in part, appeal dism'd in part*, No. 20-2311, 2022 WL 1449180 (4th Cir. May 9, 2022); *Bimber's Delwood, Inc v. James*, 496 F. Supp. 3d 760, 782–85 (W.D.N.Y. 2020); *Lebanon Valley Auto Racing Corp. v. Cuomo*, 478 F. Supp. 3d 389, 400–02 (N.D.N.Y. 2020); *Savage v. Mills*, 478 F. Supp. 3d 16, 30–32 (D. Me. 2020); *JWC Fitness, LLC v. Murphy*, 265 A.3d 164, 176–78 (N.J. App. Div. 2021); *State v. Wilson*, 489 P.3d 925, 940–42 (N.M. 2021); *Friends of Danny DeVito v. Wolf*, 227 A.3d 872, 893–96 (Pa. 2020), *cert. denied*, 208 L. Ed. 2d 17, 141 S. Ct. 239 (2020).[8]

The first *Penn Central* factor, the economic impact of the regulation, weighs against a takings finding. The Bars complain about the lost revenue stemming from their temporary inability to operate as a traditional bar. But a takings claim looks at the loss of value to the property, not the effect on the income generated by the property. *See Mayhew*, 964 S.W.2d at 935–36; *see also Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) (noting, in the context of a

---

[8] *See also Case v. Ivey*, No. 21-12276, 2022 WL 2441578, at *4 (11th Cir. July 5, 2022); *McKinley v. Grisham*, No. CV 20-01331 JHR/JFR, 2022 WL 2048593, at *6 (D.N.M. June 7, 2022); *Or. Rest. & Lodging Ass'n v. Brown*, No. 3:20-cv-02017-YY, 2020 WL 6905319, at *6 (D. Or. Nov. 24, 2020); *Gym 24/7 Fitness, LLC v. State*, No. 355148, 2022 WL 982050, at *11 (Mich. Ct. App. Mar. 31, 2022).

due process property interest, that "business in the sense of the activity of doing business, or the activity of making a profit is not property in the ordinary sense"). Here, the Bars make no allegation that the value of their property was greatly diminished by the temporary inability to conduct in-person operations.

Despite being able to offer drive-through, pickup, or delivery service to customers, we conclude that the second factor weighs in favor of the Bars. The primary investment-backed expectation of the Bars was that they were legally authorized to operate as bars, meaning they could sell alcoholic beverages to patrons in person. That the Bars were unable to do so for many months demonstrates that the challenged executive orders interfered with this expectation. *See Mayhew*, 964 S.W.2d at 936; *see also TJM 64*, 526 F. Supp. 3d at 338 (considering regulatory takings challenge to bar and restaurant COVID–19 closures and concluding that "although Plaintiffs' businesses are highly regulated entities and their reasonable investment-backed expectations would include the possibility of regulatory changes over the years, the Closure Order in light of the global pandemic is not the type of regulation that Plaintiffs could reasonably have expected when investing in their businesses" (internal quotations omitted)).

The third factor, however, the character of appellees' actions, when viewed in the context of a national public health emergency, cuts strongly against a conclusion that the executive orders amount to regulatory takings. *See, e.g.*, *TJM 64*, 526 F. Supp. 3d at 338 (dismissing restaurants' claim that closure order due to COVID-19 was a regulatory taking, reasoning "it is undeniable that th[e] exercise of police powers was intended to promote the common good in response to a global pandemic that impacted public

17

safety"); *Freeland*, 520 F. Supp. 3d at 1078 (noting that "[u]nsurprisingly, courts across the country agree that the final *Penn Central* factor, the character of the disputed government action during the COVID-19 pandemic, weighs heavily in Defendants' favor"); *Bimber's Delwood*, 496 F. Supp. 3d at 784 (explaining that "the character of the government action here is a temporary exercise of the police power to protect the health and safety of the community, which weighs against a taking"). Here, the restrictions were issued to combat "the imminent threat of disaster" posed by COVID–19, a contagious and deadly virus. As the United States Supreme Court has observed, "[g]overnment hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law." *Penn Cent.*, 438 U.S. at 124 (quoting *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 413 (1922)).

Applying the *Penn Central* factors, we conclude that the Bars have not pleaded an actionable regulatory taking. Although the Governor's executive orders adversely affected the Bars' reasonable investment-backed expectations, such temporary emergency orders are hallmark examples of regulations that "adjust[] the benefits and burdens of economic life to promote the common good." *See Penn Cent.*, 438 U.S. at 124; *United States v. Cent. Eureka Mining Co.*, 357 U.S. 155, 168–69 (1958) (concluding that government orders temporarily shutting down gold mines during war time were not a regulatory taking in light of the "temporary restriction[]," wartime demands on resources, and the fact that the shutdown was "essential to the war effort"); *Mugler v. Kansas*, 123 U.S. 623, 668, (1887) ("[P]rohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot,

18

in any just sense, be deemed a taking."). Therefore, we hold that the Bars have not met their burden to allege facts affirmatively demonstrating subject matter jurisdiction. *See Clark*, 544 S.W.3d at 770. Further, we conclude that this is a jurisdictional defect that cannot be cured by a pleading amendment. *See Miranda*, 133 S.W.3d at, 226–27. Accordingly, the trial court properly dismissed this claim for want of subject-matter jurisdiction. *Id.* at 226. We overrule the Bars' third issue.[9]

## V.    CONCLUSION

We dismiss for want of jurisdiction the Bars' appeal from the dismissal of their claims for declaratory and injunctive relief. We affirm the trial court's dismissal of the Bars' takings claims, which seek monetary damages.

LETICIA HINOJOSA
Justice

Delivered and filed on the
20th day of October, 2022.

---

[9] Because we have resolved this case on jurisdictional grounds, we need not address the Bars' issue challenging the trial court's denial of its application for temporary injunction. *See* TEX. R. APP. P. 47.1.